IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-00269-01-CR-W-NKL |
| ) | |
| D'ANDRE D. JONES, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

On August 8, 2006, Defendant D'Andre D. Jones ("Jones") was indicted for being a felon in possession of ammunition. Jones filed a Motion to Suppress [Doc. # 23] the items found by law enforcement officers in the trunk of his vehicle on the day of his arrest, which included ammunition, body armor and a purchase receipt. On February 5, 2007, United States Magistrate Judge Robert E. Larsen recommended [Doc. # 37] that this Court enter an order denying Jones' Motion to Suppress Evidence. Jones timely objected to the magistrate's report and recommendation. After a *de novo* review of the record, the Court denies Jones's Motion to Suppress Evidence.

**I.**   **Facts**

On July 13, 2006, Detectives Eric Roeder and Cory Horalek were shopping for guns in the Avenue Pawn and Fine Jewelry store ("Avenue Pawn"). Neither detective was wearing a police uniform. While in the store, they observed Jones try on a bulletproof vest. Roeder did not know Jones's name, but Roeder believed that he

1

recognized Jones. If Jones was who Roeder thought he was, then Jones was a felon. At the suppression hearing, Roeder testified as follows:

> **Q.** And what else did you see?
> **A.** At the time I saw [Jones] try [the vest] on and he fastened the straps. And at that time I believed that I recognized him from a previous contact. And that I also knew him to be a felon.

(Tr. at 5).

> **Q.** And, in fact, in your investigative report that you subsequently completed you put in there that you thought you recognized that subject from prior contacts, is that correct?
> **A.** Yes.
> **Q.** But at that point you didn't know –
> **A.** I couldn't – I didn't know –
> **Q.** – who that individual was?
> **A.** Yeah. I didn't know his name.
> **Q.** Now, you also indicated that in addition to thinking you might recognize that person, that you also believed that they might have a prior felony conviction?
> **A.** Yes, sir, I did say that.

(Tr. at 32-33).

After seeing Jones in Avenue Pawn, Roeder exited the store in an attempt to learn Jones's identity:

> **Q.** And what else, what happened next?
> **A.** At that time just based on me believing that I recognize him, I went out to the parking lot . . . I was going to check the license plate to see if I could get a name to refresh my memory as to who – if I knew who he – if I could recall the name that I was thinking.

(Tr. at 6).

2

Roeder, however, was unable to obtain any information from Jones's car because it had a temporary tag. While outside, Roeder noticed another occupant in the passenger's seat of Jones's car. (Tr. at 36-37).

Meanwhile, inside the store, Jones was completing his purchase of the vest. In the same transaction, Jones also purchased a box of ammunition. Detective Horalek heard the cashier ask Jones if he was a felon. Jones hesitated at first and then answered "no." The cashier again asked Jones if he was a felon. The second time, Jones promptly answered "no." (Tr. at 62-64, 68). Based on Jones's hesitation when first asked whether he was a felon, Horalek concluded that he was a felon because he believed that a non-felon would immediately deny being a felon. (Tr. at 63-65).

Roeder then reentered the store, informed Horalek as to his suspicions and witnessed Jones complete the purchase of the vest and ammunition. Neither detective asked Jones to identify himself and Roeder did not attempt to get Jones's identifying information from the cashier. (Tr. at 37-38).

Roeder left the store and entered his unmarked vehicle. He planned to follow Jones and conduct a car stop. Roeder testified as follows:

> **Q.** And why did you want to conduct a car stop?
> **A.** I wanted to see if I could identify the subject as a person that I did know that was a felon, because I knew it was illegal for him to be purchasing and obtain a bulletproof vest and ammunition.
> **Q.** In terms of identifying him, could you be more specific? What is it about his identity did you want to clarify?
> **A.** I wanted to know his name.

(Tr. at 7).

3

Before leaving the pawnshop's parking lot, Roeder saw Jones put the vest in the trunk of his car, but Roeder was uncertain as to where Jones placed the ammunition. Jones got in his vehicle and exited the parking lot. Roeder followed.

Roeder observed Jones drive into a parking lot behind a nearby business. Roeder watched as Jones exited his vehicle, walked to the rear of the vehicle, opened the trunk and began pulling the vest over his head. (Tr. at 7, 42). While he was watching Jones, Roeder was on the phone with the Central Patrol Division Dispatcher. Roeder was trying to get police assistance because he believed an armed robbery might occur. (Tr. 8). At this point, crossing traffic obscured Roeder's view. Thus, Roeder did not see Jones take the vest off and put it back in his trunk. Roeder testified as follows:

> **Q.** And when you explained your assessment of the situation, what did you tell the officers?
> **A.** I just told them that I observed him in the store and that I observed him trying on the bulletproof vest, and that I believed that I recognized him as someone that I knew to be a convicted felon.

(Tr. at 10-11).

Tactical enforcement officers, including Officer Vernon Huth, overheard the dispatcher and moved into the area around Avenue Pawn. A short distance away, Jones reentered his vehicle and began traveling towards the pawnshop. Roeder continued to follow him. Jones entered the Avenue Pawn parking lot for a second time. Roeder also entered the pawnshop's parking lot and observed Jones exit his vehicle, walk to the rear of the vehicle, open the trunk, remove the vest, shut the trunk and reenter Avenue Pawn.

4

(Tr. at 9, 46-47, 54). Roeder made no attempt to stop Jones, and no longer believed Jones was going to rob the pawnshop.

Roeder contacted the other officers by telephone and asked them to stand by until Jones exited the pawnshop. (Tr. at 9). Detective Horalek was still inside Avenue Pawn when Jones returned. Horalek heard Jones request a receipt for the items he had purchased. In so doing, Jones gave the cashier his name, but Horalek did not ask the cashier what name was given.

Approximately two minutes after reentering the pawnshop, Jones exited the pawnshop carrying the vest, placed the vest in the trunk of his vehicle and got into the driver's seat. His passenger never moved. Other than pulling the vest over his head after leaving the pawnshop the first time, which led Roeder to believe Jones was preparing for an armed robbery, neither Jones nor his passenger ever did anything indicative of an intent to rob the pawnshop.

After Jones reentered his car, the tactical officers entered the parking lot and conducted a felony car stop. (Tr. at 10). With weapons drawn, the officers commanded Jones and his passenger to exit the vehicle and lay on the ground. The suspects complied without incident. While on the ground, Jones and his passenger were handcuffed. (Tr. at 78-79, 91). Roeder told the officers that he observed Jones buy ammunition in the store, saw him try on the vest and believed he recognized Jones as a felon. (Tr. at 10-11).

While detained, Jones gave the officers his identifying information. According to Roeder, prior to Jones volunteering the information, the officers did not know his identity:

> **Q.** And until he gave his identification to the officers [after being detained], you didn't know his name before that?
> **A.** Correct.

(Tr. at 51).

> **Q.** Prior to them being pulled over, you didn't have any indication of the identities of the persons in the car?
> **A.** Other than that I felt that I recognized –
> **Q.** Okay.
> **A.** – the defendant.
> **Q.** But that was a thought or a belief?
> **A.** Yeah. It was my belief that I did recognize him. Yes, sir.

(Tr. at 53).

A subsequent computer search revealed that Jones had a prior felony conviction. (Tr. at 100-101). At the same time as the computer search, the officers searched Jones's trunk and found the vest, ammunition and receipt. Jones was placed under arrest for being a felon in possession of ammunition and body armor. (Tr. at 100-101).

## II. Discussion

Law enforcement officers may not make an investigatory stop unless they have a reasonable and articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 25-31, 88 S. Ct. 1868 (1968). A reasonable suspicion is defined as one based upon a "particularized and objective" basis, which is more than an inchoate and unparticularized suspicion or hunch. *United States v. Thomas*, 249 F.3d 725, 729 (8th Cir. 2001); *United States v. Logan*, 362 F.3d 530, 533 (8th Cir. 2004). "Whether the particular facts known

to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (quotation omitted). Furthermore, it is well settled that a court may look to all the circumstances and the collective knowledge of the officers involved in the stop when determining whether the reasonable suspicion standard has been met. *United States v. Chhunn*, 11 F.3d 107, 110 (8th Cir. 1993).

Jones was suspected of being a felon in possession of ammunition. This suspicion was based on Roeder's belief that he recognized Jones as a felon and his knowledge that Jones possessed ammunition and Horalek's observation that Jones hesitated the first time the pawnshop cashier asked whether he was a felon. Jones was also seen trying on a bullet proof vest after buying it and then returning to get a receipt. This behavior alone is suspicious and, in conjunction with the officers' belief that Mr. Jones was a felon, provides a "reasonable and articulable suspicion of criminal activity." A "*Terry* stop" is justified by "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Mr. Jones, contends that the police officers did not actually believe that he was a felon because if they had, they would have arrested him as soon as he purchased the ammunition. Police, however, should not be faulted for continued investigation. Because Detective Roeder tried to find out the defendant's name does not mean he was untruthful or unreliable when he testified that he believed that he recognized the defendant from a prior contact and he knew him to be a felon. (Tr. at 5).
7

The Government has also shown that there was a "reasonable probability the [ammunition] would have been discovered in the absence of police misconduct," and (2) " the police must have been pursuing a substantial, alternative line of investigation." *United States v. Alvarez-Gonzales*, 319 F.3d 1070, 1072 (8th Cir. 2003). The magistrate correctly concluded that there is a reasonable probability that the police would have discovered the evidence in the trunk after a computer search confirmed that the defendant was a felon. The officers saw him purchase the ammunition and never saw him remove it from the car. One way or the other, it was inevitable that this evidence would be seized.

Accordingly, the Court finds that the officers did have a reasonable and articulable suspicion that Jones was engaged in criminal activity at the time they detained him, and the seizure of the ammunition in his trunk was inevitable. Therefore, Jones's Motion to Suppress Evidence is denied.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Jones's Motion to Suppress Evidence [Doc. # 23] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 8, 2007
Jefferson City, Missouri